Bruce T. Moats (Wyo. Bar No. 6-3077)
Law Office of Bruce T. Moats, P.C.
2515 Pioneer Avenue
Cheyenne, WY 82001
(307) 778-8844
Fax: (307) 635-2434
hmoats@hackerlaw.net

Counsel for Proposed Intervenor-Respondents
*Alterra Mountain Company, Aspen Skiing Company,
Hunt to Eat, Roan Creek Ranch, Thistle Whistle Farm,
and Western Spirit Cycling*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| STATE OF WYOMING ) | Case No. 21-CV-56-J |
| Petitioners, ) | |
| vs. ) | |
| THE UNITED STATES DEPARTMENT OF ) INTERIOR; DEBRA ANNE HAALAND, in her ) official capacity as Secretary of Interior; THE ) BUREAU OF LAND MANAGEMENT; NADA ) CULVER, in her official capacity as acting ) Director of the Bureau of Land Management; and ) KIM LIEBHAUSER, in her official capacity as the ) acting Wyoming State Bureau of Land ) Management Director, ) | |
| Respondents. ) | |

## MOTION BY BUSINESS-COALTION TO INTERVENE AS RESPONDENTS

## INTRODUCTION

Alterra Mountain Company, Aspen Skiing Company, Hunt to Eat, Roan Creek Ranch, Thistle Whistle Farm, and Western Spirit Cycling (collectively, "Business-Coalition") move to intervene as respondents. Petitioner State of Wyoming are challenge the U.S. Department of Interior, Secretary Deb Haaland, U.S. Bureau of Land Management, and Wyoming State Director Kim Liebhauser for a "de facto moratorium on all federal oil and gas leasing in Wyoming and across the nation" (the "De Facto Moratorium"). The Business-Coalition seeks to ensure that the De Facto Moratorium is upheld and remains in place to protect their businesses. The Business-Coalition satisfies the Rule 24(a)(2) standards for intervention as a right—the motion is timely, the Business-Coalition's interests relate to the lawsuit's subject matter, vacating a De Facto Moratorium will impair the Business-Coalition, and Respondents cannot adequately represent the Business-Coalition's private, economic interests. Alternatively, intervention is proper under Rule 24(b).

In accordance with Local Rule 7.1(b)(1)(A), undersigned counsel has conferred with counsel for existing parties to determine their position on this Motion. Petitioners do not oppose. Federal Respondents take no position on the Motion.[1]

## BACKGROUND

I. <u>DEVELOPING OIL AND GAS RESOURCES ON FEDERAL PUBLIC LANDS</u>

The U.S. Department of the Interior, through the U.S. Bureau of Land Management (BLM), manages oil and gas resources located within federal lands under the Mineral Leasing Act and the Federal Land Policy and Management Act (FLPMA). The Mineral Leasing Act

---

[1] The Business-Coalition is not submitting an Answer or other responsive pleading with this Motion because, under Local Rule 83.6(b), none is required of Respondents.

gives the BLM broad discretion to decide whether to lease lands for oil and gas development, when to do so, and for which parcels. 30 U.S.C. § 226(a); *see Western Energy All. v. Salazar*, 709 F.3d 1040, 1044 (10th Cir. 2013). FLPMA establishes a three-step approval process for BLM's management of the federal oil and gas program: planning, leasing, and permitting. *New Mexico v. Richardson*, 565 F.3d 683, 689 n.1 (10th Cir. 2009) (describing process); *Pennaco Energy v. U.S. Dept. of Interior*, 377 F.3d 1147, 1151 (10th Cir. 2004).

Under FLPMA, BLM first prepares resource management plans (RMPs) for each unit of land within its jurisdiction. 43 U.S.C. § 1712(a); 43 C.F.R. § 1601.0-5(n). In this zoning-type plan, BLM identifies the uses that may occur within units it manages, including which areas are open for oil and gas development and which are closed. *New Mexico*, 565 F.3d at 689 n.1; *see Norton v. SUWA*, 542 U.S. 55, 59 (2004) (RMPs determine "allowable uses, goals for future condition of the land, and specific next steps" for particular areas). The second decision involves leasing parcels. For "competitive leasing," companies may file an "expression of interest" about parcels open to oil and gas. *See* 43 C.F.R. § 3120.1-1(e). BLM then decides whether those nominated lands are in fact available under the applicable RMP, *Pennaco Energy*, 377 F.3d at 1151, 43 U.S.C. §1732(a), 43 C.F.R. §§ 1610.5-3(a), 1601.0-5(b), and, if so, whether to make them available through a competitive leasing process. 43 U.S.C. § 1712(e). The last stage involves BLM's review of an Application for Permit to Drill within the confines of the lease. 43 C.F.R. § 3162.3-1. Concurrent with each stage, BLM evaluates environmental impacts as required by the National Environmental Policy Act (NEPA). *See, e.g.*, 43 C.F.R. §§ 1601.0-6, 3162.5-1(a).

Leasing is a significant stage in this process because it conveys a right to develop federal resources on public lands. *Pennaco*, 377 F.3d at 1160; *Conner v. Burford*, 848 F.2d 1441, 1449-

50 (9th Cir. 1988).[2] BLM retains "considerable discretion" as to whether, where, and when to issue a lease. *Western Energy All.*, 709 F.3d at 1044 (holding "[t]he MLA, as amended by the Reform Act of 1987, continues to vest the Secretary with considerable discretion to determine which lands will be leased."); *see* 30 U.S.C. § 226(a) ("All lands subject to disposition under this chapter which are known or believed to contain oil or gas deposits *may be leased* by the Secretary." (emphasis added)). Quarterly lease sales occur when lands are eligible and available. 30 U.S.C. § 226(b)(1)(A); 43 C.F.R. § 3120.1-2(a).[3]

II.     THE DE FACTO MORATORIUM[4]

On January 27, 2021, President Biden issued Executive Order 14008 to address climate change. Published in the Federal Register a few days later, 86 Fed. Reg. 7619 (Feb. 1, 2021), section 201 of the Order acknowledges the country "face[s] a climate crisis that threatens our people and communities, public health and economy, and, starkly, our ability to live on planet Earth." As detailed throughout the Order, the United States government and its federal agencies intend to take on a leadership role to combat climate change and mitigate its impacts.

---

[2]     However, BLM can attach stipulations (conditions) to a lease that restrict future development to protect certain resources. 43 C.F.R. §§ 3101.1-3. Once a lease is issued, BLM can only curtail development consistent with any lease stipulations, *id.*, or as may be required by other federal laws, *see Wyoming Outdoor Council v. Bosworth*, 284 F.Supp.2d 81, 91 (D.D.C. 2003) (holding species-related protections required by Endangered Species Act provisions can be imposed); *see also Pennaco Energy*, 377 F.3d at 1160 (suggesting leases must reserve authority for implementing other federal laws).

[3]     "Eligible lands" are "those identified in 43 C.F.R. § 3100.0-3 as being subject to leasing, i.e., lands not excluded from leasing by a statutory or regulatory prohibition." 43 C.F.R. § 3100.0-3 (identifying lands not eligible); BLM Manual 3120.11. "Available lands" are those "open to leasing in the applicable RMP…where all statutory requirements and reviews have been met, including compliance with NEPA." *Id*.

[4]     For the convenience of this Motion, Movants refer to the De Facto Moratorium because that is the label provided by the State of Wyoming in the Petition. In doing so, however, Movants are not conceding that a De Facto Moratorium exists and, that if it does, it meets the test for a final agency action under the Administrative Procedure Act.

Section 208 of the Order directs the Secretary of Interior to temporarily pause new oil and gas leasing on public lands until the Department of the Interior completes a comprehensive review and reconsideration of the Federal oil and gas program. The pause on new leases does not impact valid, already-issued leases or constrain the Secretary's permitting authority on those leases. The Secretary's analysis, per the Order, must consider "potential climate and other impacts associated with oil and gas activities," ask whether royalty rates for extracting fossil fuel resources should be increased to account for the costs resulting from climate change, and whether any "other appropriate action" should be taken.

On March 25, 2021, Interior held a public forum explaining the forthcoming process.[5] In her public remarks, Secretary Haaland emphasized "Interior's commitment to robust engagement with external stakeholders, including Tribes, governors, and Members of Congress."[6] The forum involved speakers representing tribes, industry, environmental groups, labor, racial equity, and academia. Information generated by the forum and from a public comment period will provide the foundation for an interim report due out in early summer 2021.

III.   THIS LAWSUIT

Petitioner filed suit on March 24, 2021, naming the Department of Interior (Interior), U.S. Bureau of Land Management (BLM), Secretary of Interior Haaland, and BLM State Director Liebhauser as respondents. The Petition does not challenge the pause called for in the Executive Order or the President, but instead what it is calling the De Facto Moratorium—a label it given to

---

[5]   The entire three-and-a-half-hour forum remains available for public viewing. https://www.youtube.com/watch?v=KRIb-fzIqcY. Notice of the forum was provided on March 18, 2021. https://www.doi.gov/pressreleases/interior-department-announces-details-public-forum-federal-oil-and-gas-program.

[6]   https://www.doi.gov/news/secretary-haaland-delivers-remarks-interiors-public-forum-federal-oil-and-gas-program.

postponements and suspensions of oil and gas leasing by state BLM offices—for violating federal law. Shortly after its filing, the Petition was served on Federal Respondents. ECF Doc. 9.

IV.     THE SIX COMPANIES SEEKING TO INTERVENE

Alterra Mountain Company is a family of year-round ski-mountain destinations that include recreation, hospitality, real estate development, food and beverage, retail, and service businesses. Headquartered in Denver, Alterra operates Steamboat and Winter Park (Colorado), Squaw Valley-Alpine Meadows, Mammoth Mountain, June Mountain, and Big Bear Mountain (California), Stratton and Sugarbush (Vermont), Snowshoe (West Virginia), Crystal Mountain (Washington), and Deer Valley and Solitude Mountain (Utah). David Perry Decl. ¶ 1.

Aspen Skiing Company is a four-season resort in Aspen and Snowmass, Colorado that includes four hotels, four ski mountains, and 18 restaurants. Aspen employs 4,000 people in winter and is the largest employer in Colorado's Roaring Fork Valley and neighboring communities. It is part of the $20 billion U.S. snow-sports economy. Auden Schendler Decl. ¶ 1.

Hunt To Eat is a hunting and fishing apparel and education business dedicated to building a community committed to protecting wild places, fish, and animals. It runs outdoor education and hunting and fishing camps on federal public lands. Mahting Putelis Decl. ¶¶ 2-3.

Roan Creek Ranch is a woman-owned, family-run ranch, raising British Park White Cattle for direct consumer sales. It relies on BLM permits to graze its cattle on allotments in the Roan Creek drainage north of Grand Junction, Colorado. Kathryn Bedell Decl. ¶¶ 2-3.

Thistle Whistle Farm is a farm located near Hotchkiss, Colorado and is surrounded by public lands. It grows vegetables, culinary and medicinal herbs, and small fruit while raising chickens, ducks, honeybees, and dairy goats. The farm hosts educational programs for students, immigrant families, and local community members. Mark Waltermire Decl. ¶¶ 2-3.

Western Spirit Cycling is a multi-day biking outfitter headquartered in Moab, Utah. One of the largest holders of recreation permits on the public lands, it conducts trips in Arizona, Arkansas, California, Colorado, Idaho, Montana, North Dakota, Oregon, South Dakota, Utah, Washington, and Wyoming, with 35 employees and customers from all over the country and world. Ashley Korenblat Decl. ¶¶ 2-3.

## ARGUMENT

I.  THE BUSINESS-COALITION IS ENTITLED TO INTERVENTION AS OF RIGHT

Movants can intervene in existing litigation when the following requirements are met: (1) the motion to intervene is timely; (2) the movant has an interest relating to the subject of the action; (3) the movant is situated such that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) the movant's interests are not adequately represented by the existing parties. Fed. R. Civ. P. 24(a)(2). Courts construe intervention motions liberally and analyze these four factors in a practical manner. *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009).

   A.  The Motion Is Timely.

This element asks whether movant delayed seeking intervention such that it prejudices the parties. *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250-51 (10th Cir. 2001). This Motion has not been delayed. The case just began. The State of Wyoming filed its Petition on March 24, 2021. According to the docket sheet, the Court has set no deadlines and no motions have been filed. Because this is an APA case, Respondents must file the administrative record within ninety days of service and that deadline has not passed. No party will be prejudiced by the Motion's timing.

B.     The Business-Coalition Has Interests In The Subject Matter Of This Litigation.

Movants must have an interest relating to the subject matter of the litigation. *Clinton*, 255 F.3d at 1152-53. A threat of economic injury is a sufficient interest. *WildEarth Guardians*, 573 F.3d at 996 (finding mine owner's economic interest "undoubtedly gives a petitioner the requisite interest" in suit challenging mine's operation); *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002) (same). And when litigation raises environmental-related, public concerns, "the requirements for intervention may be relaxed." *San Juan County v. U.S.*, 503 F.3d 1163, 1201 (10th Cir. 2007); *WildEarth Guardians v. U.S. National Park Service*, 604 F.3d 1192, 1198 (10th Cir. 2010) (finding "'indisputable' that a prospective intervenor's environmental concern is a legally protectable interest").

These companies have economic interests related to the De Facto Moratorium due to their use of public lands and that they are harmed by oil and gas development. They rely on public lands for their business enterprises—for grazing cattle, Bedell Dec. ¶ 3, hunting and fishing, Putelis Dec. ¶¶ 4,5,7, and biking, Korenblat Dec. ¶ 2, 5—and oil and gas leasing and development lessen their ability to use these lands and burden their bottom lines, Bedell Dec. ¶ 4, Korenblat Dec. ¶¶ 4-5, Putelis Dec. ¶¶ 4, 5, 7, 11; *see Clinton*, 255 F.3d at 1152 (finding "economic stake" is sufficient interest). Similarly, the effects of oil and gas impacts their businesses' health and profits: by destroying and fragmenting habitat used by big game, Putelis Dec. ¶¶ 7-11; polluting water sources used for crops, Waltermire Dec. ¶¶ 8-9, and cattle, Bedell Dec. ¶ 4; creating truck traffic on dirt roads used to manage livestock, *id*, and for bike trips, Korenblat Dec. ¶ 5; and by contributing to climate change that reduces snowpack and requires capital investments in new snowmaking equipment, Perry Dec. ¶ 5, Schendler Dec. ¶¶ 3-4, puts water supplies at risk for irrigation, Waltermire Dec. ¶¶ 8-9, and snowmaking, Schendler Dec. ¶

7

4, creates hotter and drier climates that forces changes in farming practices, Waltermire Dec. ¶ 8, grazing management, Bedell Dec. ¶ 5, hunting and fishing opportunities, Putelis Dec. ¶¶ 8-10, and how bike trips are conducted and scheduled, Korenblat Dec. ¶ 5.  And oil and gas leasing and development conflicts with Alterra, Aspen, Hunt To Eat, Thistle Whistle Farm, Western Spirit Cycling's core missions—to conduct business in a manner that promotes a sustainable environment, Perry Dec. ¶¶ 2, 7, Schendler Dec. ¶¶ 2-3, Putelis Dec. ¶¶ 4-5, 7, Waltermire Dec. ¶¶ 4-7, Korenblat Dec. ¶ 4-6, which also evinces an interest in this case's subject matter. *See Clinton*, 255 F.3d at 1252; *see also WildEarth Guardians*, 604 F.3d at 1200-01.

        C.        <u>The Case's Outcome May Impair The Business-Coalition's Interests</u>.

The impairment requirement "presents a minimal burden." *WildEarth Guardians*, 604 F.3d at 1199.  The inquiry concerns the practical, not legal, effect of an adverse ruling. Fed. R. Civ. P. 24(a)(2); *San Juan County*, 503 F.3d at 1195 ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."); *see, e.g.*, *id*. at 1200 (noting plaintiffs' success in lawsuit could trigger subsequent action by federal agency that may impair applicant).

Wyoming seeks to "set aside" and enjoin the De Facto Moratorium and a court order mandating quarterly oil and gas leasing on public lands. ECF Doc. 1 at 9; *see Utahns*, 295 F.3d at 1116 (analysis focuses on requested relief).  Such relief would harm the Business-Coalition because these companies would lose their ability to use public lands unencumbered by the effects of oil and gas.  The resumption of leasing means more economic impacts, both on and also off public lands. Waltermire Dec. ¶ 7-9 Perry Dec. ¶¶ 3-7; Schendler Dec. ¶¶ 4-6.  Even an unused leased parcel, which can remain that way for years, 43 C.F.R. §§ 3120.2-1, 3100.0-5, creates uncertainty about whether competing businesses can use those public lands. Korenbalt Decl. ¶ 4.

8

D.	Respondents Do Not Adequately Represent The Business-Coalition's Interests.

This Rule 24(a) element "also presents a minimal burden." *WildEarth Guardians*, 604 F.3d at 1200; *Clinton*, 255 F.3d at 1254 ("The possibility that the interests of the applicant and the parties may diverge need not be great" to meet inadequate representation element). "[T]he burden of showing inadequacy of representation is satisfied…[w]here a government agency may be placed in the position of defending both public and private interests." *WildEarth Guardians*, 604 F.3d at 1200; *Clinton*, 255 F.3d at 1255-56 (noting Tenth Circuit does not assume government can adequately represent interests of private parties).

Federal Respondents cannot adequately represent the Business-Coalition. The Department of Interior and BLM cannot simultaneously represent the unique economic interests of the individual companies within the Business-Coalition along with a more general public interest. *See WildEarth Guardians*, 604 F.3d at 1200 (reiterating it is "on its face impossible" for government to "protect[] the public's interest and the private interests of a prospective intervenor"); *Utahns*, 295 F.3d at 1117 (finding government unable to protect both public interest and that of trade association); *WEA v. Zinke*, 877 F.3d 1157, 1168-69 (10th Cir. 2017) (finding sufficient BLM's "multiple objectives" and possible "shift" in positions to meet test). Although Respondents are likely to defend the De Facto Moratorium, their interests do not align entirely; for example, while the government may choose to implement a De Facto Moratorium on *new* leasing, it is doing nothing to address pre-existing leases, *see* Waltermire Dec. ¶ 8-9, including those sitting idle and not being developed, Korenblat ¶ 4.

II.	THE COURT SHOULD GRANT PERMISSIVE INTERVENTION

If the Court finds the Business-Coalition does not qualify for intervention as a matter of right, Rule 24(b) vests courts with discretion to permit intervention when an applicant has a "claim or defense that shares with the main action a common question of law or fact." Fed. R.

Civ. P. 24(b).  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).  Courts may also consider such factors as whether (1) movant adds value to the case (2) movant's interests are adequately represented, and (3) adequate remedies exist elsewhere. *Lower Arkansas Valley Water Cons. Dist. v. U.S.*, 252 F.R.D. 687, 690-91 (D. Colo. 2008).

As noted above, this Motion is timely, will not delay the proceeding, and the existing parties do not adequately represent the Business-Coalition's interests.  The Business-Coalition's defense will relate directly with Petitioner's claims.  The Business-Coalition's participation will provide a perspective that existing parties lack, especially when it comes to relief: namely, the economic benefits to the business community resulting from De Facto Moratorium.  Accordingly, the Business-Coalition satisfies the standards for permissive intervention and the Court should award it intervenor status under Rule 24(b).

## CONCLUSION

For the foregoing reasons, the Motion should be granted allowing the Business-Coalition to intervene in all aspects of this litigation.

Respectfully submitted on April 29, 2021.

>  */s/ Bruce T. Moats*
>  Bruce T . Moats (Wyo. Bar No. 6-3077)
>  Law Office of Bruce T. Moats, P.C.
>  2515 Pioneer Avenue
>  Cheyenne, WY 82001
>  (307) 778-8844
>  Fax: (307) 635-2434
>  hmoats@hackerlaw.net
>
>  Counsel for Proposed Intervenor-Respondents
>  *Alterra Mountain Company, Aspen Skiing Company, Hunt to Eat, Roan Creek Ranch, Thistle Whistle Farm, and Western Spirit Cycling*

CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2021, I electronically transmitted the attached above-document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to:

*/s/ Bruce T. Moats*
Bruce T. Moats